I am Rebecca Kurz from the Public Defender's Office arguing on behalf of Mr. Adams today. A panel of this court recently decided a similar Second Amendment issue in United States v. Hewley. So I wanted to start today by making a couple points about the analysis used in that case to determine his Second Amendment claim. In Hewley, the court said restricting gun possession in felons, even if they are non-violent felons, differs meaningfully from restricting people who have not been convicted of serious offenses from having guns in their own home. I read that passage and to me it's saying there's a reason to make the distinction. There is a rational basis to have legislation that puts some gun control restrictions in place. The court in Hewley then went on to discuss the congressional intent behind Section 922G. And I think that this analysis contradicts Heller. Because the Supreme Court in Heller actually rejected the idea that congressional intent is even relevant. The court in Heller said that the scope of the Second Amendment was determined at the time it was ratified. And that it wasn't for future legislatures or even future courts to determine whether the scope of that amendment was too broad. So it rejected the idea that you do interest balancing. It doesn't look to rational basis or intermediate scrutiny or strict scrutiny. Why is that a bad argument for you given the language at the end of the opinion that simply says, nothing in this opinion is meant to affect and it lists several categories. So if you go to a categorical approach, isn't that terrible for you? Well, I don't read the presumptively lawful language as foreclosing any kind of as applied constitutional challenge to the Second Amendment. I don't think he is saying that categorically you can ban any felon with a lifetime permanent ban from ever carrying or possessing a weapon again. And he doesn't explain what he means when he says, what Justice Scalia meant when he said presumptively lawful. I don't know if he's simply referring to the constitutional principle that is assumed that Congress enacts constitutional laws. Then we analyze them to determine whether they fall within the scope of the amendment. Now, if I think the phrase presumptively lawful, it suggests that it's a rebuttable presumption. It's nothing more than that. It's not saying that any challenge would lose. So I think what Heller wants the question to be, the initial question for the analysis is, what is the scope of the Second Amendment at the time it was ratified? And why, in your view, does Adams not fall within that category? Adams' prior felony conviction and the conduct underlying the 922G conviction, both were for carrying a concealed weapon. So I think the question is, at the time of ratification under the Second Amendment, could you carry a concealed weapon on your person? And I think the answer is yes, that you could, and I have two bases. First, there's language in Heller where the majority specifically adopted a definition of the words to bear. The court pointed out that the amendment says that you can keep, and that refers to keeping weapons within the home, and to bear, meaning to carry weapons. And the definition the court applied was to bear means to wear, bear, or carry upon the person or in the clothing or in a pocket for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person. So their own definition in Heller specifically says it could be carried on the person and it could be concealed in a pocket. They don't use the term concealed, though, right? They do not. Yeah. They do not. As you know, the states are all over the board, and it's in Heller and it's several other places, about open, concealed, intent to carry. Right. Do you think that's what the court was really saying in Heller? Do you think that your argument that you're making now is what the court really intended in Heller? Or do you think they intended a categorical rule, longstanding prohibitions on possession of arms by felons not covered by this opinion? No. I don't think they intend a categorical rule. I think what Heller wants is look at the conduct that is prohibited, what led to the felon that made him subject to 922G, and analyze did that conduct fall within the scope of the Second Amendment at that time. So is your approach then literally case-by-case, that there's no categorical rules that you're asking us to adopt? It would be case-by-case, but I think there's going to be different categories. So violent felons, I think it requires a categorical analysis. When did we see legislation that prohibited violent felons from carrying weapons? Well, it was in 1938. And then they enumerated certain offenses that felons couldn't have weapons, and then that legislation evolved over time. You're talking about federal laws here? Yes, yes. Do you know anything about state laws? Well, I know some things. Well, you know what I mean by that. What I mean is you're referencing 1938 and federal. Do you know what the states have? Because they've been all over the boards all the years. With respect to Missouri, the government cited a case from, I think, 1800s or maybe early 1900s saying you can't carry concealed. And now we've evolved up until modern day where you can carry concealed, except for in certain places. And we've actually lowered it from a felony to a misdemeanor. But this, I think, is why Heller said look to the scope of the amendment at the time. Don't go through a history of legislation where we have fluctuated over time as to these ideals. That's not how we define enumerated constitutional rights. They have a set meaning. And so I don't think every single case, once the analysis has been done in certain categories of cases, for example, you have a case where someone committed a murder using a firearm. They've been found in possession and are now being tried under 922G. Let's say you've already decided a case where someone had committed a rape, committed a kidnapping, using a weapon to further that violent offense. I think you've then decided that category. You don't have to keep coming back and revisiting it. Are we going to be in the Johnson world only in the context of Second Amendment? I mean, are we going to be looking at the crime that the person was convicted of? Are the courts going to be looking at whether it was in fact committed in what would be termed a violent way? It's interesting, that question, because for people convicted of misdemeanor domestic violence, that's the prohibition that keeps them from owning a gun, that that portion of the definition section has in it that the offense must have as an element the use of force. But the term felony is not defined in a similar way. It just says it needs to be an offense greater than one year. It then has certain exceptions, and then it has the provisions for restoration of civil rights. So I think you could draw a distinction between the misdemeanor domestic violence people and the felony people, to where you're not doing Johnson categorical analysis for the felony people. The only analysis is going back. Would this conduct have been banned in 1791 when the amendment was ratified? Counsel, a day after the Hewley opinion, there is the Taylor opinion. Are you familiar with Taylor unpublished? Sorry, I'm not. Oh, I'm sorry. It's also out of your office with the U.S. Attorney, the same thing. It's the same statute, you know, and it does the Hewley sort of approach on the same statute. Now, it's a separate subdivision, I'll give you that, but on the same statute. So why isn't Taylor, and I think Taylor was sometime on the same docket with this case, this very case Adams. So why doesn't Taylor kind of settle this? I know it's unpublished, but why isn't it right? Well, and I'm sorry, I'm not familiar with the case, so I don't know the exact holding of that case. Okay. So proceed. You did mention, though, that it's under a different subsection. It is. And I do think that that is important because I would distinguish between carrying a concealed weapon and unlawful exhibiting in an angry or threatening manner. That is where I think you're going to see, going back historically, there was an offense, common law offense, from England called an affray, and that was carried over to the United States. And that was an offense which prohibited carrying a gun in a manner that was intended to cause terror to other people. So if that was the sense at the time of ratification, those who committed an affray, they're not protected by the Second Amendment. Those who merely carried concealed are protected by the Second Amendment. Are you proposing a two-step process? Are you proposing an interest process, a core, evaluate the core? What kind of test would you propose if you could just propose a test? That's the difficult question. If I could just propose a test, I would say a one-step test, and I would adopt the Heller analysis. What is the scope? But what becomes problematic in the real world, I mean, Heller is awesome in theory, but it becomes difficult, and I think that the courts, the cases that I cite at page 10 of the brief, Chester, Marzarella, and especially the Ninth Circuit case, Chauvin, which is what the magistrate judge relied on, those cases indicate, what do you do when the historical record is not clear? What if there is no conclusive proof whether this conduct fell inside or outside the scope of the Second Amendment? Each of those courts, if that is the case, they then go to an interest-balancing approach, and each of those courts has applied intermediate scrutiny. I've got to ask you, it seems to me Heller acts like the balance was struck when the Constitution was written, out of here. So how can you get to that second step? I don't know. And honestly, I think the analysis really has to be more of not, if it's not conclusive, if the historical record is not conclusive, then I think the conduct falls within the Second Amendment scope. And so Justice Scalia, in writing Heller, it's kind of a go big or go home, kind of an all or nothing. If you're within the scope of the amendment, then you get to do that conduct. If you're not, you don't get to do it. You never were allowed to do it, so you're forever prohibited. Now, in the government's brief, if you would get to a second interest-balancing step, the government suggests that it should be rational basis analysis. But Heller rejected that in footnote 27, and they said if it was nothing more than rational basis, then the Second Amendment really would have no purpose. It would be redundant with the constitutional principle that laws are presumed to be constitutional, that Congress acted constitutionally. Do you think presumptively lawful might mean it's okay under the Second Amendment unless it violates something else? Another part of the Constitution or another law or appreciation? That did not occur to me when I read that. And I'm into my rebuttal time. Okay. I'd like to save a little. Thank you. Mr. McArthur. Thank you, Your Honors, and may it please the Court. My name is Jeff McArthur. I was not the lead prosecutor on this case. That was AUSA Justin Davids, who was tending to his newborn daughter. I was, however, the lead prosecutor on the recent opinion mentioned prior, which was United States v. Hughley, which I think should guide the Court in its determination here. That was released in, I believe, June of this year. And aside from the Taylor case, which I'm also not entirely familiar with, I believe it's the Court's most recent guidance on as-applied challenges to the Felony Possession Statute. Now, in that per curiam opinion, this Court held that although the defendant's prior felonies were nonviolent, he had not shown that he was no more dangerous than a typical law-abiding citizen, and that is why his as-applied challenge failed. Here, the defendant, Alonzo Adams, between the year 2010 and 2014, had accumulated a relatively significant criminal record. 2010, he was convicted of sexual assault. 2013, he was convicted of resisting arrest. In 2013, he also got his felony conviction for unlawful use of a weapon. That was his felony conviction. In that offense, the defendant, Alonzo Adams, actually ran from police, and during that chase, pulled the gun from his waistband and threw it on the ground to the side. So as you're going through those facts, is it your position that that's the approach we take? That when we look at, well, how about this? Let's flip it and say, what could someone prove under your view of this case to show that they were a law-abiding citizen? Is there a way to do that? Can you bring this kind of as-applied challenge if you have a prior felony conviction? I think there, and certainly this court has indicated that it could fit. There is a hypothetical situation where an as-applied challenge could rule the day. I believe it said that in United States v. Segrist. However, in this court's opinion, and hugely, it indicated that not only must you show that you are a responsible law-abiding citizen, you basically have to show that you've been above board when it comes to the law. So in regards to just having a felony conviction, that alone is not dispositive of a potential as-applied challenge. However, there has to be a record that you are a law-abiding responsible citizen. So my citation to Mr. Adams' criminal record goes to show that this person has not been that law-abiding responsible citizen. So we'll assume for these purposes that that's the case. So what would someone have to show in order to, what kind of standard are we going to apply here for a typical law-abiding citizen? How do we go about doing that? Your question is, if you were to grant an as-applied challenge, what would that defendant's argument have to be? What would his record have to look like? Wait, what is our, how do we do this? What's our standard? Not wanting to speak for the entire Department of Justice, I would think it would have to be significantly better than this. A significant amount of time would have had to pass from the point of conviction to the point where this person is making the as-applied challenge. I'd also note that this was a situation where Mr. Adams had a gun outside of the home. It was in a car on its way to his probation officer. I would think if someone, and this court mentions this in the Hughley opinion, guns for protection in the home and hearth. This is not that situation. If someone were to bring an as-applied challenge, I would think it would have to be that situation, where it's a home protection type of situation. Not to mention the fact that they wouldn't have accumulated the criminal record that Mr. Adams had. As to what specific type of person I can imagine where an as-applied challenge would rule the day, I don't know. Because I'm not sure that the person with the felony conviction from 30 years ago and has never done anything and he's found with a gun in his home. I doubt my office would ever bring that case. So I just can't imagine the person where this as-applied challenge could actually be successful unless it was maybe an overzealous prosecution. But with Mr. Adams, after his felony conviction in 2014, he was convicted of assault where he beat a woman with his fists. In 2014, also convicted of harassment where he threatened to kill a security officer. Do you think that his prior conviction is what we would term a crime of violence or is a violent felony of some sort? Well, it certainly wouldn't meet the test under a Johnson analysis and wouldn't meet the test under a guidelines analysis. But the Federal Criminal Code lays out the definition for what a conviction is. There are very few exceptions. If it's punishable by more than one year of imprisonment, you have not gotten your civil rights restored. It's not been expunged and it's not, there are a couple of exceptions. Unfair trade practices, antitrust violation, restraints of trade, basically business types of regulations. If it's not any one of those, then it qualifies as a felony for purposes of 922 G1. And 922 G1 on its face has been upheld time and time again by this court, by multiple circuits, and by the Supreme Court. We're in a sea of per curiams, unpublished. What's our closest written opinion? Is it the Bena case, B-E-N-A? What do you think the closest authority is, real authority? I think the closest real authority is likely going to be, and I believe it was cited in the Hughley opinion, is the Woolsey case. I believe that is 759 F3rd 905, pinpoint citation 909. And it's a facial challenge, right? Did it have an as-applied at all in Woolsey? That was a rejection of an as-applied challenge as well. Oh, there was an as-applied challenge. And in that rejection, the court specifically noted that the defendant did not show that he was no more dangerous than a typical law-abiding citizen. And I think, though we are kind of swimming in a lot of unpublished per curiams, I think that's... Well, now compare this case, compare Adams to Woolsey and Bena, B-E-N-A. How does this case compare to that? Well, this is... The difference between this case and those is this is a specifically quote-unquote nonviolent offense. I believe in Bena and Woolsey, we were dealing with a lot more violent convictions. I think Woolsey involved a robbery conviction, and I'm not entirely familiar with what Bena's prior conviction was. And so we are dancing on a little bit of a different ground here, but I still think the fact of the conviction, the fact of the felony conviction that Adams was not able to comport himself to the law, and the fact that he is not shown that he's a more responsible and law-abiding citizen, should carry the fact that his as-applied challenge must fail. And I would also note that the appellant was not able to cite to a single case where an as-applied challenge was actually successful in the country. And I don't... My research has not found one either, and certainly not out of the circuit. And I don't think Alonzo Adams, with his pretty poor criminal history and his ability to adjust on probation, is the person that the as-applied challenge should actually be successful. I mean, this was... So you're talking about an as-applied challenge to G1, the felon in the prior felony? Yes, Your Honor. He was two weeks removed from his felony conviction when the facts of this case actually took place. But he's only got the one, right? He's only got the one felony conviction, multiple misdemeanors. He was on probation in that felony case as well as three other cases. He was a criminal history Category 4 in this case. I think that could actually be a factor in determining what an as-applied challenge, if it could ever be successful. A criminal history Category 4, I'd argue, is dispositive of whether an as-applied challenge could actually go forward. What if that criminal history, even if it's in Category 4, whether it's additional misdemeanors, does it matter whether those are violent or is it just that they're indicative of being non-law abiding? In other words, you can imagine a variety of things that wouldn't be violent but would clearly show that you're not someone who crosses the T's and dots the I's when it comes to the local ordinances and laws. I don't think violence necessarily has to be part of the rubric that Your Honors have to put themselves through. And I'd note, in Hughley, this court stated that the Felony Possession Statute's purpose reaches beyond felons who have proven themselves violent. Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society. In this case, Adams could not follow the law, could not follow gun regulations, could not follow his terms of probation, and committed various crimes involving violence. But despite the fact that they were violent misdemeanors that he carried out, he's not a law abiding responsible citizen. Now, had these have been speeding tickets, there may be a different story. I'd be making a different argument. But regardless- But that, I'll just interrupt quickly. That's not law abiding, speeding. That's a very fair point. But I would think your run-of-the-mill speeding ticket, while not law abiding- We all do it, right? Yes. It's something that happens to quite a few people in our country. Whereas convictions for assault, harassment, and sexual assault do not happen to a lot of people. I'd also note that in this offense, Mr. Adams was driving to meet his probation officer when he was found with a gun under his seat. And he told the officers when they located the firearm that he didn't know anything about it. That turned out to be incorrect, as his DNA was found on the trigger and the magazine inside of the gun. And these are not the actions of a law abiding citizen, again. Has the Department of Justice given you any guidance about a test for this kind of case? Two-part test, core conduct test, categorical test. Well, I cite to, there is a footnote in the brief, footnote two in the government's brief. What page is it on? That is on, it goes from page 11 to 12. Okay. Where we assert that rational basis should be the test in determining whether an as-applied challenge should go forward. And that, we actually- Didn't Heller reject rational basis? Heller rejected rational basis for non-felons. However, being a felon, they are not, and I'll just quote from United States v. Hook, 471F3rd 766. That's a Seventh Circuit case from 2006. They stated felons are not a protected class. That's before Heller. Did you say 2006? That is pre-Heller, but however, I don't believe Heller- Oh, no. That can't be good as before Heller, right? Go ahead with your argument. Heller didn't address what class convicted felons would fall under, and so I would argue that Heller didn't actually address the basis for which we analyzed the felon in possession statute. I think Judge Benton's question was whether the Justice Department has given you any guidance, and you cited footnote two, which doesn't mention anything about the department. Are you saying that this is the Solicitor General's position? I'm not saying- There's one sentence in footnote two. That the government asserts that rational basis review remains appropriate for analyzing as-applied challenges. I can't say that I have spoken with the Solicitor General specifically about that test. However, because I know we've put forward this basis in other cases across the country, I'd say I'm probably standing on pretty good footing in noting that this should be the test. And if there are no further questions, I'll surrender the balance of my time to the appellee if she'd like. Well, she can use her own time. You can just cede your time back to the court. Thank you for your argument. Thank you, Your Honor. I just wanted to respond to the language from Woolsey and from Benna and the argument about the typical law-abiding citizen. That came at the very end of the Heller opinion, where basically Justice Scalia was speaking to Justice Breyer. And Breyer wanted to have a test that said something like- Justice Breyer. Absolutely. Justice Breyer. Thank you. He said that the test should be an interest balancing and it should ask whether the statute burdens conduct in some way that is out of proportion to the offense. It was not-he was saying-the court was saying that, I think, even under your test, under any interest balancing test, this would-the conduct in Heller, having a gun in one's home, would always meet whatever balancing test you want to impose. That is the core of the right. The right is at its apex. But it wasn't a threshold test in the sense of one must prove to be a law-abiding typical citizen. It's not here we have to meet this standard before we can carry a gun. I don't think that was the intent of that passage. Unless there are further questions. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Please call the next case for argument.